IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| PHILLIP EUGENE WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 6:11-CV-6334-JO |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of Social ) | OPINION AND ORDER |
| Security, ) | |
| ) | |
| Defendant. ) | |

JONES, District Judge,

Plaintiff Phillip Watkins appeals the Commissioner's decision denying his application for supplemental security income payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

**PRIOR PROCEEDINGS**

Watkins previously applied for disability benefits and received an adverse administrative determination on March 22, 2004. On February 29, 2008, he filed his current application for

1 - OPINION AND ORDER

supplemental security income alleging he became disabled in April 2001, due to mental impairments and back pain.

The ALJ applied the sequential disability determination process described in 20 C.F.R. § 416.920 and *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Watkins's ability to perform basic work activities limited by an antisocial personality disorder, malingering, a history of substance abuse, and degenerative disk disease. The ALJ found that Watkins had failed to meet or equal the criteria listed for any of the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). The ALJ then found that, despite his impairments, Watkins retained the residual functional capacity ("RFC") to perform work at the medium level of exertion, as long as the work did not require more than occasional interactions with coworkers or the public. The ALJ elicited testimony from a vocational expert ("VE"), who said jobs exist in the national economy that a person having Watkins's RFC could perform. The ALJ concluded that Watkins was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Watkins contends the ALJ erroneously evaluated his subjective statements, the findings and opinions of two examining psychologists, and the statements of two lay witnesses. By restating this challenge to the ALJ's interpretation of the evidence in various ways, he argues that the ALJ failed to identify all of his severe impairments at step two, improperly concluded that he did not meet the criteria for any listed impairment at step three, failed to accurately assess his RFC, and elicited testimony from the VE with hypothetical limitations that did not accurately reflect all of his limitations.

### II. Credibility Determination

In his written application, Watkins alleged that brain damage and mental illness impede his ability to work by causing problems with concentration, memory, and social interactions. He also alleged that he has visual and auditory hallucinations. He indicated that he stays in bed except to eat, use the bathroom, and go outside to smoke. Watkins also complained of back pain, numbness, and headaches.

At his administrative hearing, Watkins testified that he cannot work primarily because of mental impairments that make it difficult for him to get along with others in work situations. He feels uncomfortable if he sees or can be seen by other people. He has problems with anger control. Sudden loud noises make him agitated and angry. He also testified that he cannot remember his own age, the year he was released from federal probation, or the last time he used alcohol or drugs.

The ALJ believed that Watkins had limitations interacting with others, primarily due to an antisocial personality disorder, and limitations in physical exertion, primarily due to back pain

3 - OPINION AND ORDER

resulting from degenerative disk disease. Specifically, the ALJ found that Watkins could only occasionally interact with coworkers or the public and could not engage in activities requiring greater than medium physical exertion. The ALJ did not believe Watkins's claims that his symptoms are so intense, persistent, and limiting that he cannot perform work within these restrictions.

If a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged and no affirmative evidence of malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of symptoms. An adverse credibility determination must be based on clear and convincing reasons unless the record contains affirmative evidence suggesting that the claimant is malingering. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir. 1996).

Here the ALJ found that the medical evidence supported impairments that could reasonably be expected to produce some of Watkins's alleged symptoms, but also identified affirmative evidence suggesting that he was malingering. The profile Watkins produced on the test for memory malingering administered by Dr. Duvall indicated he was deliberately choosing wrong answers and the validity scales on testing administered by Dr. Richardson indicated exaggeration of symptoms consistent with malingering. In addition, the ALJ referred to evidence from Watkins's prior claim, in which Watkins's former psychiatrist, Dr. Eastin, and an examining psychologist, Dr. Pitchford, made findings of likely exaggeration of mental symptoms. Neither of them would rule out malingering. This evidence suggesting that Watkins was malingering supports the ALJ's adverse credibility determination, even without additional explanation. *Carmickle*, 533 F.3d at 1160; *Smolen*, 80 F.3d at 1281.

Nevertheless, the ALJ provided a full explanation of the rationale for his credibility finding. In determining credibility, an ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Tommasetti v. Astrue*, 533 F3d 1035, 1039 (9th Cir 2008) *quoting Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995). An ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. 20 C.F.R. § 416.929(c); *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284.

The ALJ's decision demonstrates that he considered all the evidence relating to proper factors for evaluating credibility. He discussed the medical evidence at length and concluded that some of Watkins's allegations were not reasonably consistent with the findings. For example, Watkins complained of disabling back pain, but the objective findings showed no muscle weakness or atrophy in the upper or lower extremities that would reflect inactivity, no sensory or reflex loss, or deficit in motor function. Dr. Duvall watched for pain behavior during his psychological evaluation and observed no clinical signs that Watkins was in discomfort. Imaging showed degenerative changes, but no impingement of nerve roots or the spinal cord. Similarly, Watkins claimed a history of traumatic brain injury, particularly in subjective statements to Dr. Richardson, but there was no evidence, other than subjective statements, that Watkins had any organic brain condition. Such conflicts between a claimant's subjective complaints and the objective medical evidence in the record can constitute specific and substantial reasons that undermine the claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ considered the objective testing in the psychological evaluations and the opinions of Drs. Richardson and Duvall. Dr. Richardson evaluated Watkins in 2005 and 2008. He opined that Watkins had a bipolar disorder, panic disorder with agoraphobia, psychotic disorder, dementia, obsessive compulsive disorder, and dyssomnia. The ALJ gave this opinion little weight because the diagnoses went beyond what the testing administered by Dr. Richardson supported. Dr. Richardson administered testing which showed average intelligence with weaknesses in writing and mental calculations. Watkins's scores on standard memory test scales were extremely low and consistent with malingering, but Dr. Richardson thought Watkins was not faking. The validity scales on personality testing and on an inventory for obsessive compulsive traits also suggested malingering, but Dr. Richardson again relied on subjective reporting and believed that Watkins was not faking. Aside from this testing, which could reasonably have been interpreted as evidence of malingering, Dr. Richardson's diagnostic opinion was based on the subjective reports of Watkins and his mother.

Dr. Duvall had the benefit of reviewing Dr. Richardson's evaluations and other records dating back to Watkins's prior disability claim. He administered a test for memory malingering, and with each trial, Watkins's scores inexplicably became worse. His scores were poorer than those of patients with significant neuro-cognitive deficits such as Alzheimer's Dementia. Dr. Duvall said a person with such scores would not be able to care for himself and would have deficits that were not present in Watkins's mental status examination and clinical interview. Dr. Duvall concluded that Watkins was deliberately choosing wrong answers. Where a claimant appears to impede the accurate testing of his limitations, an adverse inference can be drawn as to his credibility regarding the severity of his symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Dr. Duvall also observed that Watkins did not give genuine effort during his mental status examination. Dr. Duvall

6 - OPINION AND ORDER

diagnosed malingering of cognitive deficits and antisocial personality disorder. He opined that Watkin's global functioning was in a range involving only transient symptoms with slight impairment of function.

The ALJ also found Watkins's allegations of disabling mental impairments inconsistent with the opinions of the state reviewing psychologists who reviewed the entire case record and concluded that, contrary to Dr. Richardson's diagnoses, the record did not support any significant cognitive deficits or mood disorders. In his adverse credibility determination, the ALJ properly gave greater weight to the opinions of Dr. Duvall and the reviewing experts and less weight to the opinion of Dr. Richardson.

The ALJ also considered Watkins's treatment history. Despite his complaints of disabling symptoms, Watkins went years without seeking treatment, seeing a physician, or requiring medications. The record also indicates that Watkins did not keep appointments or comply with treatment when it was prescribed. Such failure to seek treatment or follow a prescribed course of treatment may cast doubt on the sincerity of a claimant's subjective statements about disabling symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995).

The ALJ also considered Watkin's inconsistent and vague statements about his symptoms and his history of substance abuse. Watkins gave Dr. Duvall discrepant information from what he told earlier providers and evaded specifics about symptoms by changing the subject. He told Dr. Richardson he had used marijuana within a month of his 2005 evaluation, but at his 2008 evaluation said he had not used any since 1996. Such inconsistencies support an adverse credibility determination. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

7 - OPINION AND ORDER

Similarly, Watkins's conduct was inconsistent with his alleged psychological symptoms. Contrary to his claims of severe panic, inability to get along with others, and significant cognitive deficits, Watkins interacted in a socially appropriate and cooperative manner, without signs of anxiety or panic, or difficulty communicating or understanding, when he was interviewed by investigators and when he was observed by health care providers. Although he testified that he could not remember his own age without his mother's assistance, when interviewed by investigators, he could recall his ex-wife's name and birth date and his own work history. Such inconsistencies between his statements and his conduct support an adverse inference as to the veracity of his statements. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ considered other evidence of his activities and found them inconsistent with his claims of being essentially house bound. Watkins reported he could prepare simple meals, shop, drive, and help his parents with chores and errands. His mother confirmed that he could assist with projects around the mobile home park that she manages. These reports undermined the credibility of Watkins's statements that he does not leave his room except to eat, use the bathroom, and go outside to smoke and that he cannot tolerate seeing or being seen by others. The ALJ considerdd Watkins's history of legal troubles but observed that it did no corroborate his asserted inability to tolerate interactions with others. Although Watkins has a remote history of violent behavior as a juvenile, his more recent incarceration resulted from drug manufacturing and trafficking and do not reflect altercations or other signs of difficulty interacting with others.

The ALJ's credibility determination is supported by inferences reasonably drawn from the record. His decision provides an adequate basis for the court to conclude that he did not discredit Watkins's subjective statements arbitrarily. In addition to the evidence of malingering, the ALJ

provided a clear and convincing explanation that is supported by the record. The credibility determination is upheld. *Tommasetti*, 533 F.3d at 1039; *Batson*, 359 F.3d at 1193; *Thomas*, 278 F3d at 958.

### III. Opinions of Examining Psychologists

Watkins contends the ALJ improperly discounted Dr. Richardson's opinion in favor of the opinions of Dr. Duvall and the agency reviewing psychologists, Drs. Rethinger and Kennemer. An ALJ can reject an examining physician's opinion that is inconsistent with the opinion of another examining physician, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

The ALJ gave Dr. Richardson's opinion less weight because his diagnoses were not substantiated by his mental status examination or by the testing he administered and appeared to be based on the subjective statements of Watkins and his mother. In addition, his diagnoses were inconsistent with the record as a whole and contradicted by the evaluation of Dr. Duvall.

Watkins's argument that Dr. Richardson relied primarily on the testing he administered is not persuasive. Dr. Richardson's testing showed average intelligence with weaknesses in writing and mental mathematical calculations. Although the remainder of the testing could have been consistent with extremely poor memory, personality disorder, and obsessive compulsive traits, the validity scales of all of these tests suggested malingering. Dr. Richardson discounted the widespread malingering results based on the subjective statements of Watkins and his mother. Under such circumstances, the ALJ could rationally infer that Dr. Richardson gave greater weight to the subjective statements than to the testing administered.

Watkins's argument that Dr. Duvall lacked sufficient observation-based corroborative information to form an accurate opinion is not persuasive. Dr. Duvall had the benefit of reports from the prior evaluations by Dr. Richardson, Dr. Eastin, and Ms. Callahan (a social worker), as well as Watkins's mental health and medical records, and the hearing records from his previous application for disability insurance benefits. These background materials included observation-based and longitudinal information which Dr. Duvall had the opportunity to consider. Based on a complete review of the entire case record, Drs. Rethinger and Kennemer reached the same conclusions as Dr. Duvall.

The ALJ chose to give greater weight to Dr. Duvall's opinion because he found it more consistent with the record as a whole than the opinion of Dr. Richardson. This conclusion is supported by the consistent objective findings suggesting malingering, Watkin's failure to seek or comply with treatment for his allegedly disabling conditions, and his reported behavior inconsistent with the limitations suggested by Dr. Richardson.

The ALJ's decision to discount Dr. Richardson's opinion sets forth specific, legitimate reasons based on inferences reasonably drawn from substantial evidence in the record. *Molina*, 674 F.3d at 1111. Although the evidence could be interpreted differently, in a manner more favorable to Watkins, the court is not free to overturn an ALJ's factual determination on the basis that "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039.

### IV. Lay Witness Statements

Watkins contends the ALJ failed to credit the observations of Watkins's mother and another lay witness, Cassandra Vandehey. An ALJ must take into account the statements of lay witnesses unless the ALJ expressly determines to disregard such evidence and gives reasons germane to each

witness for doing so. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Watkins's mother testified that Watkins spends most of his time in his room, but helps with chores around the mobile home park once in a while. He does not arrange his own medical appointments. He does not go to the store alone to shop, at least in part because he does not have any money and she must pay for anything he buys. He is able to bathe and groom himself, but sometimes needs to be reminded to do it more often. When Watkins worked at the Dairy Queen, his mother was the manager and she completed his tasks when he did not do them. She said that Watkins seems to have some problem with the lower back and left leg and seems to have a lot of headaches.

The ALJ did not disregard Watkins's mother's testimony regarding her observations of Watkins's activities. The ALJ considered those observations but found the activities she reported were not indicative of a disabled person completely unable to perform any work. The ALJ believed the activities were more consistent with the ability to perform work within the RFC restrictions on social interactions and physical exertion.

Watkins objects to the ALJ's statement, "Without objective testing presumably, Ms. Watkins has relied mostly on the claimant's subjective reporting." Admin. R. 24. In context, this quoted statement appears to address the testimony from Watkins's mother that Watkins seemed to have problems with his lower back, left leg, and headaches. The ALJ's inference that Watkins's mother relied on subjective reporting of these problems rationally flows from the subjective nature of the symptoms and the absence from her testimony of observations reflecting the limiting effects of these problems. For example, she did not say she observed that Watkins was unable to perform specific

11 - OPINION AND ORDER

activities because of these problems. Nor did she say that Watkins's impairments, and not his attitude, preferences, habits, or other non-disability factors, caused his poor work performance at Dairy Queen. Indeed, taking all of Margo Watkins's testimony as true would not establish specific impairments causing functional limitations in addition to those in the ALJ's RFC assessment. Accordingly, even if the ALJ's evaluation was erroneous, any error was harmless. *See Molina*, 674 F.3d at 1115 (an error is harmless if, looking at the record as a whole, the error does not alter the outcome of the case); *Carmickle*, 533 F.3d at 1162-63 and n. 4 (an error is harmless if the ALJ's determination remains supported despite the error).

Cassandra Vandehey provided a written statement in support of Watkins's claim. She indicated that Watkins spends most of his time lying down or watching television. He is able to dress, feed, bathe, and groom himself, although he does not shave or shower as often as he did in the past. When he tries to help with chores, "something will go wrong and he will get mad." Admin. R. 199. He can drive to the store to buy cigarettes. To people who do not know him, Watkins seems grouchy. He is forgetful and has a difficult time getting along with authority figures.

The ALJ considered the lay witness statement and did not reject any of her observations. He noted that the activities she observed were not very limited. She did not describe any treatment Watkins underwent to try to alleviate his symptoms. She indicated that Watkins sometimes got mad, she did not elaborate regarding the intensity, frequency, and persistence of such episodes or the circumstances that triggered them. The ALJ concluded that the restrictions in the RFC assessment would accommodate the limitations that could reasonably be inferred from Vandehey's statement.

The ALJ considered the lay witness statements and showed that his interpretation of that evidence was based on rational inferences drawn from the evidence in the record. To the extent the

ALJ disregarded any part of the lay witness statements, his explanation provided adequate reasoning for doing so. *Valentine*, 574 F.3d at 694; *Lewis*, 236 F.3d at 511.

## V.     Step II Determination

Watkins contends the ALJ erred at step two by failing to designate each of Dr. Richardson's diagnoses to be "severe" within the meaning of the regulations. At step two, a claimant must meet the so-called severity requirement. The claimant must show that he has any combination of impairments which causes more than minimal limitation in his ability to do basic work activities. 20 C.F.R. § 416.920(c). If the claimant fails to make this *de minimis* showing, he is not disabled within the meaning of the Social Security Act and the disability determination process ends without proceeding to the remaining steps. 20 C.F.R. § 416.920(a)(4)(ii).

Here, the ALJ resolved step two in Watkins's favor, finding his ability to work significantly affected by a combination of impairments, including degenerative disk disease, an antisocial personality, malingering, and residual effects of a history of substance abuse which Watkins reports to be currently in remission. The ALJ acknowledged that Watkins has significant functional limitations in exertion and social interactions. After resolving step two in Watkins's favor, the ALJ properly continued the decision-making process until reaching a determination at step five. Any error in failing to designate additional impairments as separate and distinct severe impairments at step two did not prejudice Watkins. In the remaining steps of his decision, the ALJ considered and accounted for all the evidence of functional limitations presented by the examining psychologists, lay witnesses, and the record as a whole, as described previously. Accordingly, any error at step two was harmless. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(Any error in omitting an impairment from the severe impairments identified at step two was harmless where step two was

resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to list an impairment as severe at step two was harmless error where the ALJ considered all the evidence of functional limitations later in the decision).

Moreover, Watkins's reliance on Dr. Richardson's diagnoses is simply a restatement of his argument that the ALJ erred by giving greater weight to the opinions of Dr. Duvall and the reviewing psychologists. The ALJ's interpretation of that evidence was not irrational and will not be overturned as explained previously.

## VI. Listing of impairments

Watkins contends he meets the so-called "B criteria" for the presumptively disabling mental impairments in the regulatory Listing of Impairments. The B criteria are assessments of the severity of impairment in four broad categories of function. The B criteria are satisfied by showing any two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. Listing of Impairments § 12.00(C).

The ALJ used the psychiatric review technique prescribed in the regulations. 20 C.F.R. § 416.920a. He made a specific finding as to the degree of limitation in each of the B criteria functional areas as required by 20 C.F.R. § 416.920a(e)(4). He found that Watkins had mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace and no extended episodes of decompensation. These findings were consistent with the opinions of the agency reviewing psychological experts.

Watkins contends the ALJ should have found him markedly impaired in all three functional areas (excluding the decompensation category) based on Dr. Richardson's opinion and the lay witness statements. This again restates Watkins's contention that the ALJ should have interpreted this evidence differently. As described previously, the ALJ properly discounted Dr. Richardson's opinion and found that the lay witnesses's observations did not suggest significant restrictions beyond those in the RFC assessment. The ALJ's conclusions were based on inferences reasonably drawn from substantial evidence in the record and the court is not free to substitute a different rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

## VII.    RFC Assessment

Watkins contends the ALJ failed to properly evaluate his RFC assessment because he did not include limitations reflecting the impairments from Dr. Richardson's opinion, the lay witness statements, and the opinion of Dr. Duvall. The ALJ's evaluation of Dr. Richardson's opinion and the lay witness statements has been adequately reviewed already. The ALJ gave Dr. Duvall's opinion great weight, noting that he found Watkins's global functioning to be in a range involving transient symptoms that are expectable reactions to psychosocial stressors and pose no more than slight impairment in any category of function. The ALJ's RFC assessment reasonably reflects this opinion.

The ALJ considered all the evidence of functional limitations and reached an RFC assessment based on the limitations supported by the record as a whole. The ALJ was not required to incorporate additional limitations he found unsupported by the record. *Batson*, 359 F3d at 1197-98; *Osenbrock v. Apfel*, 240 F3d 1157, 1163-65 (9th Cir 2001); *Magallanes v. Bowen*, 881 F2d 747, 756-57 (9th Cir 1989).

15 - OPINION AND ORDER

## VIII. Vocational Testimony

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the functional limitations of the claimant can perform. *Yuckert*, 482 US at 141-42; 20 C.F.R. § 416.920(e), (f). The ALJ can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F3d at 1043. Here the ALJ elicited testimony based on Watkins's RFC assessment. The VE testified that unskilled occupations at the light and medium level of exertion, such as appliance cleaner, small parts salvager, and sweeper/cleaner, are not precluded by the limitations in Watkins's RFC and represent thousands of jobs regionally and nationally. The ALJ relied on that testimony to conclude that Watkins retained the RFC to perform work that exists in significant numbers in the national economy.

Watkins contends the ALJ elicited this testimony from the vocational expert with hypothetical assumptions that did not accurately reflect all of his functional limitations. Watkins argues that the ALJ's hypothetical limitations omitted limitations from Dr. Richardson's opinion and from the lay witness statements. To repeat again, this evidence was properly evaluated and the ALJ included the limitations he found supported by the record. While the evidence is susceptible to an interpretation more favorable to Watkins, that is not a basis to overturn the ALJ's decision. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision.

DATED this 23rd day of April, 2013.

                                              Robert E. Jones
                                              United States District Judge